DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction for drug trafficking and possession entered following a no contest plea in the Lucas County Court of Common Pleas. Because we conclude that the trial court properly denied appellant's motion for evidence suppression, we affirm.
 {¶ 2} Appellant is Ronald Bordieri. On February 17, 2003, appellant was eastbound on the Ohio Turnpike when a following Ohio State Highway Trooper observed his pickup truck drift over the edge line onto the berm three times. The trooper later testified that she stopped appellant because she suspected that he was fatigued or driving while impaired and because crossing the edge line constituted a marked lane violation.
 {¶ 3} During the stop, the trooper testified, inconsistencies in appellant's statements, his demeanor and observations of his vehicle made her suspect that appellant might be involved in criminal activity. While the trooper was conducting a computer check of appellant's driving record, she called for the assistance of another trooper operating nearby. With the assistance of the responding officer, the first trooper executed a "walk around" of appellant's vehicle, utilizing a dog trained to detect the odor of drugs. After the dog alerted at the rear seam of appellant's closed truck bed, officers opened the bed cover and discovered 315 pounds of marijuana.
 {¶ 4} Appellant was arrested and charged with possession of and trafficking in drugs, both second degrees felonies. The trooper also ticketed him for a minor misdemeanor marked lanes violation. Appellant pled not guilty and moved to suppress the evidence found in his truck on the grounds that the initial stop was unsupported by reasonable, articulable suspicion and, alternatively, if the stop was reasonable, its scope was unreasonable. When the trial court denied appellant's suppression motion, he changed his not guilty plea to no contest, was found guilty and sentenced to concurrent eight year terms of incarceration for each felony count. The disposition of the marked lane offense is unclear from the record.
 {¶ 5} Appellant now appeals his conviction, setting forth the following two assignments of error:
 {¶ 6} "1. The trial court committed prejudicial error by denying the Motion to Suppress of the Defendant/Appellant, as the evidence did not demonstrate a reasonable articulable suspicion to stop the vehicle.
 {¶ 7} "2. The trial court committed prejudicial error by denying the Motion to Suppress of the Defendant/Appellant, as even if the stop was valid, the scope of the search exceeded any Constitutionality permissible limits."
 I. Initial Stop {¶ 8} In his first assignment of error, appellant asserts that the trial court erred by refusing to suppress evidence gathered as a result of what he characterizes as an unlawful traffic stop.
 {¶ 9} The Fourth Amendment to the United States Constitution and Sec.4, Art. I of the Ohio Constitution prohibit unreasonable seizures of persons or property. Stopping an automobile and detaining its occupant or occupants constitutes a seizure within the meaning of those provisions.Delaware v. Prouse (1979), 440 U.S. 648, 653. Consequently, a traffic stop may only be effected when there is probable cause to believe that the driver is violating a traffic or equipment regulation, Id. at 661, or there is articulable and reasonable suspicion that the vehicle or its occupant is otherwise subject to seizure for violation of the law. Id. at 663. When police stop a vehicle without either probable cause or a reasonable articulable suspicion of criminal activity, the seizure is violative of the individual's constitutional rights and evidence derived from such a stop must be suppressed. Mapp v. Ohio (1961), 367 U.S. 643,655.
 {¶ 10} In this matter, the trooper testified that she was trailing appellant's vehicle eastbound on the turnpike. Appellant's vehicle was in the right lane, the patrol cruiser slightly behind in the passing lane. According to the trooper, she observed appellant's vehicle drift across the right edge line and onto the berm on three occasions during a relatively short period of time. The trooper testified that this observation justified her subsequent stop for two reasons: a marked lane violation and a suspicion that appellant might be driving while impaired or fatigued.
 {¶ 11} In his motion to suppress, appellant maintained that neither rationale for the stop was sufficient. Without more, appellant insisted, barely crossing the right lane line was insufficient indicia for a reasonable suspicion that appellant was driving while impaired. Moreover, appellant asserted, citing this court's recent decision inState v. Downs, 6th Dist. App. No. WD-03-030, 2004-Ohio-3003, the trooper's observation did not constitute a marked lane violation.
 {¶ 12} The trial court did not reach the issue of whether the trooper's observations constituted reasonable, articulable suspicion that appellant was driving impaired. Rather, the court ruled that repeatedly crossing the solid right lane edge marker constituted a violation of R.C. 4511.33(A) and, therefore, the stop was based on probable cause of a traffic violation.
 {¶ 13} In State v. Downs, a police officer, stopped — waiting for a left turn light, observed Downs pass him in the right lane of a four lane divided highway. According to the officer, when Downs' car was approximately 250 feet from him, he saw Downs' left wheels cross the white broken lane divider once. This single lane incursion was the reason for a traffic stop that led to a drunk driving charge. The officer also charged Downs with going left of center in violation of R.C. 4511.29(A).
 {¶ 14} Downs moved to suppress, arguing that the single lane incursion was insufficient indicia of driving impaired. Downs' suppression motion was denied and he pled no contest to a violation of R.C. 4511.19(A). On appeal, we concluded that a single momentary lane incursion was insufficient to show a reasonable, articulable suspicion of impaired driving. We observed, however, that if the stop was the result of a traffic violation, it was nonetheless constitutionally permissible.
 {¶ 15} We then noted that, since R.C. 4511.29(A) is applicable only when crossing a center line into a lane which might contain oncoming traffic, it was not an offense which could have been committed on a four lane divided highway. The proper charge, we concluded, should have been under R.C. 4511.33(A). We noted, however, that R.C. 4511.33(A)(1) permits movement between lanes if, "* * * the driver has first ascertained that such movement can be made with safety." We found that, when a vehicle is literally the only one on the road, there was no traffic with which to interfere or to interfere with a lane change. "Absent traffic there is no offense." Id. at ¶ 22.
 {¶ 16} The state, in its memorandum in opposition to suppress before the trial court and in its brief on appeal, makes no attempt to distinguish Downs, but simply insists that it is bad law. Unnecessarily using several pages of brief which could have been more productively used, the state asserts that Downs is based on cases which have been overruled, is premised on a hypothetical, is dicta, directly contradicts other cases from this district, and improperly adds an extra element to R.C. 4511.33.
 {¶ 17} If the state actually read and/or understood Downs, it might have recognized that Downs represents a singularly unusual set of facts.[1] In Downs, there was literally no other traffic on any of the highway's four lanes. Even the officer who testified that he saw Downs momentarily cross the divider line was parked 250 feet away in a turn lane, waiting for a signal. R.C. 4511.33(A)(1) permits lane changes if such a maneuver may be performed safely.
 {¶ 18} As the trial court noted, appellant did not change lanes, he crossed the solid edge line, effectively going off the road, not once but three times. Moreover, there was traffic on the turnpike when this occurred: at a minimum there was a highway patrol cruiser behind appellant in the passing lane. Consequently, even without the state's intemperate attack on Downs, the case is distinguishable and unavailing to appellant. The trooper observed appellant cross the edge line three times, in probable violation of R.C. 4511.33(A)(1). As a result, she had probable cause to stop appellant for a traffic violation. Accordingly, appellant's first assignment of error is not well-taken.
 II. Scope of the Stop {¶ 19} In his second assignment of error, appellant complains that, even if the initial stop was justified, once the trooper determined that appellant was not driving while impaired, his continued detention became unreasonable absent additional reasonable, articulable suspicion of further criminal activity.
 {¶ 20} Once police stop a vehicle, either for a traffic violation or on reasonable, articulable suspicion of some other criminal activity, the officer may detain the motorist for a period of time sufficient to run a records check on the driver's license, registration and plates and to issue the driver a citation or warning. State v. Rusnak (1997),120 Ohio App.3d 24, 27, citing Delaware v. Prouse at 659.
 {¶ 21} At the suppression hearing, the trooper testified that an ordinary traffic stop takes from between ten to fifteen minutes. This stop was recorded on videotape encoded with a visible clock. The stop began at 12:16 p.m. At 12:28 p.m., the patrol's drug dog alerted on the seam of appellant's truck bed. Thus, the amount of time until the point when the dog alerted and provided suspicion of drug activity was within the time of an ordinary traffic stop. See State v. Cook (1992),65 Ohio St.3d 516 (15 minutes reasonable).
 {¶ 22} If a vehicle is lawfully detained, an exterior "sniff" by a drug dog is not a search within the meaning of the Fourth Amendment.State v. Carlson (1995), 102 Ohio App.3d 585, 594; see, also, UnitedStates v. Place (1983), 462 U.S. 696. Police need not have reasonable suspicion of drug related activity prior to subjecting an otherwise lawfully detained vehicle to a drug sniff. Id. Once a properly trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, police have probable cause to search the vehicle. State v. Moore, 9th Dist. No. 22146, 2005-Ohio-3304, at ¶ 24, citing State v. Carlson,
supra, at 600.
 {¶ 23} Since the stop at issue here was within the time ordinarily necessary to conduct a traffic stop, there is no indication that the scope of the stop exceeded constitutional limits. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 24} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded. See App.R. 24.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Singer, P.J. concur.
Skow, J. concurs and writes separately.
[1] The trial judge, in its ruling for the state, apparently understood what the state did not.