OPINION
{¶ 1} Gary E. Slider ("Mr. Slider") challenges a decision by the Portage County Municipal Court overruling his motion to suppress in connection with his conviction of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History *Page 2 
 {¶ 3} Shortly before midnight on October 24, 2006, Trooper Roger J. Kuhn ("Trooper Kuhn") observed Mr. Slider's vehicle riding on the center line while travelling southbound on State Route 44, a two-lane road. Mr. Slider's vehicle did this several times within one and one-half miles, and even when he reached the crest of a hill. Mr. Slider's vehicle rode the center line again just before he turned left onto Waterloo Road. At that point, Trooper Kuhn activated his lights and stopped Mr. Slider's vehicle.
 {¶ 4} When Trooper Kuhn approached Mr. Slider, he noticed Mr. Slider's eyes were bloodshot and glassy, his speech was a little slow, and he had a strong odor of alcohol about his breath. Mr. Slider admitted he had one or two alcoholic beverages that night. Trooper Kuhn received six clues when he administered the horizontal gaze nystagmus test on Mr. Slider, who was also slow when reciting the alphabet. In addition, Mr. Slider failed the coordination tests. Trooper Kuhn arrested Mr. Slider for operating his vehicle under the influence of alcohol and Mr. Slider later tested 0.155 BAC on the breath alcohol test.
 {¶ 5} On October 25, 2006, the State filed charges in the Portage County Municipal Court against Mr. Slider for operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (d), and for a failure to drive in marked lanes in violation of R.C. 4511.33.
 {¶ 6} On April 19, 2007, Mr. Slider filed a motion to suppress, arguing Trooper Kuhn unlawfully stopped his vehicle. The trial court scheduled a hearing on the motion. However, Mr. Slider, represented by counsel, waived the hearing and the parties stipulated to the information contained in Trooper Kuhn's written statement of fact, the traffic citation, the videotape of the incident, and a verbal report provided by Trooper *Page 3 
Kuhn. The stipulated facts, as recited in the trial court's judgment entry in connection with the motion to suppress, are as follows:[1]
 {¶ 7} "Trooper Kuhn advised that as he was following Defendant southbound on Waterloo Road [sic] on October 24, 2006 at 11:57 p.m., he observed Defendant ride in the center line on four (4) occasions for several seconds each, within approximately 1 ½ miles, over a period of one to one and one-half minutes. The Trooper advised that on one occasion, Defendant was riding the line as he reached the crest of a hill, and it appeared that Defendant was over the center line on the other side of the hill, but the Officer was unable to verify that due to the hill."
 {¶ 8} Based on these stipulated facts, the trial court overruled Mr. Slider's motion to suppress, finding that Trooper Kuhn had reasonable suspicion to believe that defendant had committed the offense of "marked lanes" and therefore stopped Mr. Slider's vehicle lawfully.
 {¶ 9} Thereafter, Mr. Slider entered a written plea of no contest to the charge of driving under the influence in violation of R.C. 4511.19(A)(1)(a). The trial court found him guilty and sentenced him to one hundred eighty days in jail, suspended his driver's license for nine months, and fined him $1,000 in court costs. The trial court suspended one hundred seventy-seven days of his jail term and $650 of the fine, on conditions that *Page 4 
he does not have alcohol related offense for two years, does not drive without a driver's license, and pays all the fines and costs as ordered.[2]
 {¶ 10} Mr. Slider now appeals the trial court's judgment overruling his motion to suppress, raising two assignments of error for our review:
 {¶ 11} "[1.] The trial court's failure to grant the motion to suppress is contrary to law and violates the appellant's due process rights as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and Article 1 Sec. Five and Sixteen to the Ohio Constitution.
 {¶ 12} "[2.] The trial court's finding of `erratic driving' was contrary to law and violates the appellant's due process rights as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and Article 1, Sec. Five and Sixteen of the Ohio Constitution."
 {¶ 13} Standard of Review
 {¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. We review the trial court's application of the law de novo."State v. Wilson, 11th Dist. No. 2007-A-0044, 2007 Ohio 6557, ¶ 12
(internal citations omitted).
 {¶ 15} In the case sub judice, the operative facts were stipulated by the parties in lieu of hearing. See footnote 1. Therefore, our review is limited to whether the trial court correctly applied the applicable legal standard to these facts.
 {¶ 16} Constitutionality of Traffic Stops *Page 5 
 {¶ 17} There are two varieties of traffic stops, with a different constitutional analysis applying to each. The first variety of a traffic stop is an investigatory stop, which is a motorized equivalent of a "Terry" stop. State v. Downs, 6th Dist. No. WD-03-030, 2004-Ohio-3003
at ¶ 12. See Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868,20 L. Ed. 2d 889. The investigative stop exception to the Fourth Amendment warrant requirement allows an officer to stop a motorist when he or she has a reasonable suspicion based upon specific, articulable facts that criminal activity has been or is occurring. Id.
 {¶ 18} The second kind of a traffic stop occurs when a police officer witnesses a violation of the traffic code and stops the motorist to issue a citation, a warning, or to effect an arrest. Downs at ¶ 11. When a stop is predicated on a traffic offense, as in the instant case, the applicable standard is whether an officer has probable cause to believe a traffic offense has occurred or was occurring. The Supreme Court of Ohio held, in City of Dayton v. Erickson (1996), 76 Ohio St.3d 3, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus, citing United States v.Ferguson (C.A. 6, 1993), 8 F.3d. 385, 391. See, also, Whren v.United States (1996), 517 U.S. 806, a police officer may stop the driver of a vehicle after observing a violation of traffic laws); Bowling Green v.Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563. *Page 6 
 {¶ 19} Pursuant to Erickson, this court has held on numerous occasions that an officer's personal observation of any traffic offense constitutes sufficient grounds to stop a vehicle. See, e.g.,Gibson-Sweeney, 11th Dist. No. 2005-L-086, 2006-Ohio-1691; Warren v.Smith, 11th Dist. No. 2002-T-0063, 2003-Ohio-2113; State v.Livengood, 11th Dist. No. 2002-L-044, 2003-Ohio-1208; State v.Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569; State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926; State v. Teter (Oct. 6, 2000), 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656; State v.Brownlie (Mar. 31, 2000), 11th Dist. Nos. 99-P-0005 and 99-P-0006, 2000 Ohio App. LEXIS 1450; State v. Lawless (Jun. 25, 1999), 11th Dist. No. 98-P-0048, 1999 Ohio App. LEXIS 2941; State v. Carleton, (Dec. 18, 1998), 11th Dist. No. 97-G-2112, 1998 Ohio App. LEXIS 6163, *10 ("when a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation"); State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, *7 ("[T]his court has repeatedly held that a minor violation of a traffic regulation that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation").
 {¶ 20} Similarly, other appellate courts also consistently appliedErickson. See, e.g., State v. McCormick (Feb. 5, 2001), 5th Dist. No. 2000 CA 00204, 2001 Ohio App. LEXIS 430, *12 ("The severity of the violation is not the determining factor as to whether probable cause existed for the stop."); State v. Turner (Dec. 21, 2000), 10th Dist. No. 00AP-248, 2000 Ohio App. LEXIS 6013; State v. Gordon (Oct. 16, 2000), 12th Dist. No. CA99-12-022, 2000 Ohio App. LEXIS 4798; State v.Stevens (Aug. 30, 2000), 4th Dist. No. 00 CA 05, 2000 Ohio App. LEXIS 4099 *17 ("the observance of traffic violations, *Page 7 
even minor violations, justifies a traffic stop and fulfills theFourth Amendment's reasonableness requirement"); State v. Weimaster (Dec. 21, 1999), 5th Dist. No. 99 CA 36, 1999 Ohio App. LEXIS 6310.
 {¶ 21} Marked Lanes Violations
 {¶ 22} Here, the traffic violation leading to the stop of Mr. Slider's vehicle concerned his failure to drive in the marked lanes in violation of R.C. 4511.33. Therefore, all that is required by Erickson for Trooper Kuhn to effectuate a constitutionally valid stop is that he had probable cause that Mr. Slider committed an offense prohibited by the statute.
 {¶ 23} That statute provides, in pertinent part:
 {¶ 24} "(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 25} "(1) A vehicle or trackless trolley shall be driven, as nearlyas is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." (Emphasis added.)
 {¶ 26} There are two interpretations available for R.C. 4511.33(A)(1). The first interpretation, adopted at some point by the Fifth, Sixth, Ninth, and Tenth Districts, finds a violation of the statuteonly when a driver fails to drive "as nearly as is practicable, entirely within a lane or line of traffic" and fails to first ascertain safety before moving from such lane or line of traffic. See State v.Philips, 3rd Dist. No. 8-04-25, 2006-Ohio-6338, *Page 8 
at ¶ 41-42 for a survey of these cases. Under this interpretation, failing to drive within the lane or line of traffic is insufficient to establish a violation of R.C. 4511.3(A)(1), and there must also be evidence that the driver's movement is not made with safety.
 {¶ 27} The second interpretation views the statute as imposing twoseparate requirements: first, a driver must drive within a lane or line of traffic as nearly as practicable; second, a driver may not move from his lane or line of traffic until the driver ascertains such movement can be made safely. Under this interpretation, failing to comply witheither prong of the statute is a violation of the statute. SeePhilips, at ¶ 43-48 for a survey of cases adopting this interpretation.
 {¶ 28} Here, the circumstances giving rise to the traffic stop are uncontested. Trooper Kuhn observed not one, but four instances where Mr. Slider's vehicle drove on the center line on a two-lane road, for several seconds each, within one and one-half miles. Furthermore, the trooper observed that Mr. Slider rode on the center line even as he reached the crest of a hill, when the ability to see the oncoming traffic at the other side of the hill was significantly impaired by the hill. It appeared to Trooper Kuhn that Mr. Slider's vehicle may have crossed over the center line on the other side of the hill, although Trooper Kuhn could not see it due to the hill.
 {¶ 29} Both prongs of the statute are implicated by these facts. Mr. Slider failed to drive entirely within his lane or line of traffic as nearly as practicable. He drove on the center line four times within a mile and half for no apparent reason. Mr. Slider's driving also implicated the safety prong of the statute, as this incident occurred around midnight on a dark two lane country road and he was observed to drive on the center line even *Page 9 
as he went over a hill when the safety of such movement cannot be ascertained at all due to poor visibility.
 {¶ 30} Therefore, under either interpretation of the statute, Trooper Kuhn had probable cause that Mr. Slider committed a traffic offense prohibited by the statute. He personally observed that Mr. Slider failed to drive entirely within his lane or line of traffic and that his vehicle was moved from his lane or line of traffic without the ability to ascertain the safety of such movement. We therefore conclude the trial court properly determined that the stop was lawful based on Mr. Slider's commission of the offense of marked lanes.
 {¶ 31} Mr. Slider cites the following three cases for his contention that the trooper did not have probable cause to stop his vehicle. Two of these cases actually support a finding of probable cause in the instant case, while the third case is factually distinguishable.
 {¶ 32} Mr. Slider first cites Gibson-Sweeney, supra. In that case, the appellee's vehicle drifted over the right hand edge line by a distance of two to three inches from the inside edge of the tires and continued to travel in this manner for six hundred feet before crossing back into the lane of travel. This court followed Erickson and reversed the trial court's grant of the appellee's motion to suppress, concluding the officer had probable cause to initiate the stop of the appellee's vehicle solely on the basis of her marked lane violation.Gibson-Sweeney at ¶ 17.[3]
 {¶ 33} Mr. Slider also cites State v. Denton Boyer (May 26, 1998), 12th Dist. No. CA97-11-096, 1998 Ohio App. LEXIS 2273, where the appellee's passenger-side tires *Page 10 
rode directly on the right edge line of the road for three hundred feet and then weaved to the left, crossing over the first double yellow line before returning to the center of the lane. The court of appeals appliedErickson and held that the officer's stop of the appellee's vehicle was valid based on her failure to stay within her marked lane of travel in violation of R.C. 4511.33.[4] Denton Boyer at *7. The court therefore reversed the trial court's grant of the appellee's motion to suppress.
 {¶ 34} Finally, Mr. Slider cites City of Mentor v. Phillips (Dec. 29, 2000), 11th Dist. No. 99-L-119, 2000 Ohio App. LEXIS 6207. In that case, an officer observed, at 12:50 a.m., the appellant's vehicle's left tires travel onto the white broken line dividing the two eastbound lanes and quickly drive back towards the center of the lane. He did so twice within several seconds. This court held that the officer did not have probable cause to believe the appellant had committed a marked lanes violation because the appellant only momentarily touched the broken line dividing the two eastbound lanes of the road. The circumstances in the instant case are distinguishable. Mr. Slider's vehicle touched the center line on a two-lane road on a dark night on four separate occasions. More importantly, he rode on the center line even while cresting a hill without the ability to ensure the safety of such movement. Both requirements of the statute were violated. Therefore, Mr. Slider's reliance on City of Mentor v. Phillips is misplaced.
 {¶ 35} On the basis of the foregoing, we conclude Mr. Slider's driving on the center line on a dark two-lane road on four separate occasions and even while cresting a hill without being able to ensure its safety, as personally observed by a trooper, *Page 11 
provided the trooper with probable cause that Mr. Slider committed a traffic offense prohibited by R.C. 4511.33.
 {¶ 36} Therefore, the trial court did not err in overruling Mr. Slider's motion to suppress. Appellant's assignments of error are without merit.
 {¶ 37} The judgment of the Portage County Municipal Court is affirmed.
DIANE V. GRENDELL, P.J., concurs,
COLLEEN MARY OTOOLE, J., dissents.
[1] In its judgment entry, the trial court stated that the parties stipulated to the information contained in (1) Trooper Kuhn's written statement of facts, (2) the traffic citation, (3) the video tape of the incident, and (4) a verbal report provided by Trooper Kuhn. We note however that the verbal report referenced by the trial court is not reflected in the record. The only statement made by Trooper Kuhn found in the record is his written statement. We further note the trial court's recitation of the facts as stipulated by the parties contain more information than what is reported in the trooper's written statement. However, Mr. Slider does not object to the trial court's recitation of the stipulated facts in his appellate brief. We therefore assume regularity of the proceedings and accept the facts found by the trial court based on its finding that the parties stipulated to these facts.
[2] The trial court stayed the execution of Mr. Slider's sentence pending the instant appeal.
[3] Mr. Slider quotes a passage from Gibson-Sweeney to support his claim of lack of probable cause. However, we note the passage he cites comes from the dissenting, not majority, opinion in that case.
[4] In his brief, Mr. Slider mistakenly cites the holding of the trial court as that of the court of appeals. *Page 1